Okay. Case number 222932, United States v. Johnson. Mr. Boulay. That's correct, Your Honor. May it please the Court. The evidence in this case should have been suppressed for two reasons. First, because the officers who performed the traffic stop at issue unreasonably prolonged the stop, making it unconstitutional. And second, because the officer's inventory search was pretextual and thus constitutionally infirm. To my first point. So before you start on your first point, let me just say, usually when we see these Rodriguez kinds of claims with stops, especially when there's a dog sniff, it's because the officer is diddling around on his squad computer for 15 or 20 or 25 minutes while a dog officer comes. But as I understand it, Officer Haber had the dog with him all along. I don't see where the dog extended this stop by a minute. That's correct. Officer Haber had the dog in this case, Your Honor. But the real crux of this case is that Officer Haber, during the evidentiary hearing below, admitted that he abandoned the traffic stop mission to perform the dog sniff when he called for backup. And that second officer, rather than continue that traffic stop mission, so continuing the typing out the second officer. So it's the time waiting for the second officer you want to focus on? No. What we focus on is the absolute break in the processing of the traffic stop mission. So sending the message? No, Your Honor. It's the fact that he testified that once the second officer arrived, he had the second officer remove Mr. Johnson from his vehicle. So that was a, they removed Mr. Johnson, which was a safety precaution taken to facilitate a dog sniff. But by this time, he already knows that Mr. Johnson has some problems. You know, he has a suspended license, a prior conviction. You know, those facts are known prior to calling for the backup. So, you know, I'm just trying to figure out at what moment in the proceedings was he doing something he shouldn't have done? Because sometimes you start out, you know, just with a minor traffic stop, and then, but then other things get uncovered as time goes on. Correct. And there was nothing here that was uncovered. And just to, I guess, clearly make my point is, he was waiting for the... The suspended license and the prior conviction. He didn't know that at the moment he's pulling the car over, I don't think. That's correct. And we're not challenging the fact that, you know, he spotted the lapsed registration of the vehicle. And that was reason to initiate the stop. Was the timing of the call for the tow truck developed in the district court? No, we did not develop that in the district court, but we do have the video evidence here. And it's clear, I believe, around minute 54 of the video, that that is when Officer Haber called for the tow truck, which occurred, of course, after the dog sniff. And so what really occurred here is when you look at the Supreme Court standard in Rodriguez, they explained that even a de minimis detour would be enough for a constitutional violation. But why is it a detour if there's already reason to think that there are additional matters to be looked into other than just the traffic stop? I mean, if the only thing, if he was just sitting there, you know, staring out the window, you know, playing a video game on his phone, you know, whatever people do, then I could see, all right, you know, he's delaying, what's the point? And maybe he says he's delaying, he has a hunch that once the dog sniffs, that would all be a different case. But I see this as a case where you're not really challenging the initial decision to pull him over, I gather. Correct. Okay, so that's fine. So as soon as that happens, he starts talking to the guy and processing things, but he finds out that there's this misdemeanor level problem that Mr. Johnson has. Well, that entitles him to deviate from any traffic-related reasons and explore that. That's when he decides he needs to call for the backup officer. Nothing seems to take all that long. But he's allowed more time to pursue a non-traffic purpose. Correct. But there's no evidence that there was, that the scope of the stop should expand to investigating criminal activity, such as that he's trafficking drugs. No, no, I understand that part. But first of all, as soon as he finds out about the I assume you would agree that the officer is within his rights to tell Johnson that he can't drive the car away from the site. Correct. We're not challenging that action. What we're challenging is the fact that all, so whatever the scope of the traffic stop was, including the items Your Honor just mentioned, that that's within the scope. But the second officer gets there and he drops everything. No one is investigating those issues any longer. And he decides, I'm going to perform a dog sniff. He has the second officer facilitate that detour. And this is like within minutes, if not seconds, of Officer, was it Officer Frankie? That's correct, the second officer, Your Honor. He shows up. It does hinge on the fact that the Supreme Court explained even a de minimis detour. So referencing the Eighth Circuit's decision that they reversed in that case, even a de minimis detour was enough. And so even though we are potentially discussing seconds here, Your Honor, that is, that was rejected in Rodriguez. Well, in Rodriguez was, as Judge Wood indicated, factually quite different. You're waiting for the dog. And we've all seen the cases with the text messages, hurry up, I can't delay this guy much longer, that kind of thing. We've seen those. But this is, yeah, when are you going to get here? But I guess I'm struggling as well. But let me ask, once it's clear that the car is not leaving with Mr. Johnson, it's hard for me to see anything is prolonging the stop. And that's why, that's the second argument, Your Honor, which is at that point it would have been an inventory search. And so what we have is at the evidentiary hearing again below, Officer Haber testified that he ordered Mr. Johnson out of the car. He decided that he was going to impound the vehicle. And the first thing he did, he said, I'm going to perform an inventory search. And step one was to run the dog around the car. And that is evidence of a criminal investigatory pretext to perform that search. But it's not even a search though, right? That's correct. But it's certainly, there's, the purpose of a dog sniff is solely, especially with this dog, which is trained to detect drugs and other contraband, the sole purpose of that is to try to suss that out. And the purpose of an inventory search is to produce an inventory. And the two are counter to each other. I don't know that they're quite that far apart though, because you run the dog around, suppose the dog hadn't alerted on anything. Then, you know, you just kind of search the car. Obviously you don't try to rip it apart and find secret compartments and all the rest of it. With the dog alerting, he's been told, as I inventory this, there is more here than meets the eye. So I don't know. And that's correct. And that's, I would point the court to our discussion at the end of our opening brief about how this does create the situation where if you find an officer doesn't think he has enough to perform, to extend a stop, but he does have enough to potentially tow or impound the vehicle. He could kind of get out of the strictures of Well, if he doesn't delay things by doing that, then. Well, no, because, Your Honor, respectfully, he could just say, well, I was going to arrest him anyway, or he couldn't go anywhere because I'm taking his vehicle. Therefore, I can extend the stop as long as I want. And that could be, that would be problematic. Well, suppose he had put Mr. Johnson in his car when the second officer comes, or in the second officer's car, says, here's Mr. Johnson, you know, drive him off, you know, to the tow truck arrives. Nothing wrong with that, right? Well, what's wrong is from the inventory search perspective, Your Honor, then if the first thing he's doing to perform his inventory search is performing a dog sniff, then that would be, again, he's not performing the inventory search to produce inventory, he would be looking for. Go ahead. Well, it's a little different. It's both a logical and, or I should say, logical logistic and safety matter. Didn't the officers need to remove Johnson from his car, secure him, you know, in the safety of a police car before conducting any inventory, particularly, I mean, you know, you're at a side of a highway at 11 o'clock at night. We agree, but if the purpose of removing Johnson of the car, from the car, was to perform the dog sniff, that's precisely what the Supreme Court warned about in Rodriguez, but. How does it, I mean, if you're, if for safety reasons, if for, forgive me, logistical reasons you're doing that, I mean, so, so the dog runs, I mean. Because the removing Mr. Johnson, looking at it through the Rodriguez lens, removing him would be solely to facilitate that sniff, which would be to facilitate the detour. Let's say it was for both reasons. They don't want him to be killed on the side of the highway. Sure, if the sole, well, Your Honor, if the purpose of removing him was to perform the dog sniff, there's always going to be a problem there, but if the purpose was from removing him was to say the dog sniff wasn't performed, they were just like, we don't want you here because it's dangerous, then we'd have a different case, but I see my time's well expired. You want to run away. Just trying to be respectful. I can't blame you. All right, but you used up all your time. I will give you your two minutes. Appreciate that, Your Honor. Okay. Mr. Temkin. Hello. Come on up. May it please the Court. Good afternoon, Your Honors. Eli Temkin for the United States. I have a question that I really have been wondering about. What is the official policy as to when and where the vehicle inventory should occur? Is it by the officers at the site of the traffic stop or at the impound lot after the vehicle is towed? What is the official policy? Your Honor, based on the policy in front of the Court that was submitted as an exhibit, I don't believe it's clear where an officer needs to conduct the inventory search, but under case law, an officer does have some discretion in how to carry out an inventory. So in this case, there would be no problem conducting the inventory, as the officers did here on the side of the road. Your Honors. I had one more question that I was thinking about, and it's this. Does the record contain any explanation as to why Haber waited to call the tow truck? I don't believe the record does contain any evidence as to why he waited to call the tow truck. He had a number of steps that he needed to take to complete the impound of the car. And so he took these steps. He conducted the inventory, he processed paperwork, and then he called for the tow truck once they were ready to get the tow truck on the scene and get the vehicle out there. So there were a number of steps he needed to take, and that's exactly what he did. Mr. Temkin, would you agree on different facts? The officer finishes the traffic stop and then says, now, but wait another minute while I run the dog around your car. That's a problem under Rodriguez? Yes. Because my question is, why is it any better if that happens in the middle of the stop, but it's an extra minute added? What matters is whether it prolongs the traffic stop. So if there's one officer there and that officer takes a break from traffic-related tasks to conduct a dog sniff, that's not permissible under Rodriguez. But if there are multiple officers there and the traffic-related tasks are conducted contemporaneously with the dog sniff, which is exactly what happened here. What was Frankie doing? Deputy Frankie was putting Mr. Johnson into the back of her car. And that's... For what purpose? She was putting him into the back of the car because it was cold outside. The undisputed testimony is that Deputy Haber got Mr. Johnson out of the vehicle so that he could conduct the inventory. Once he got him out, Deputy Haber asked Mr. Johnson a few questions, asked if he could pat him down. Mr. Johnson consented. Deputy Haber patted him down. Once they had taken that step, they had Deputy Frankie put Mr. Johnson in the back of her car because it was cold out. It was 11 o'clock at night on a January night. So not because they had ascertained that since he had a suspended license, somebody was going to have to take him away from the scene anyway? Were they planning to just like... Did they just leave people in the middle of roads? Or did they drive him somewhere? Well, logically, he would have needed to go somewhere. And he wasn't going to... And he couldn't drive his own car. That was the problem. Exactly. Would it be a violation of Rodriguez if we had, as we do here, Mr. Johnson being put in the squad car for whatever reasons and the dog running around the car at the same time? Would it be a problem to conduct the dog sniff while they're putting him in the car? No, it's not. Putting him in the back of the car is a permissible part of their traffic-related tasks under any number of cases. Lewis, Goodwill, for example, from this court. And while they were doing that contemporaneously, they ran the dog around the car. Lasted 66 seconds. And Mr. Johnson recognizes, I believe in his reply brief, excuse me, in his opening brief, page 17, that by the time Deputy Frankie got back to the truck, to Mr. Johnson's SUV, he had already finished running the dog around the car. So for those reasons, the dog sniff was permissible. It was conducted contemporaneously. Additionally, the truck wasn't going anywhere. It was about to be towed. And so even if it hadn't been contemporaneous, there just was no delay here. So you date or you fix the time of the non-drug investigation part of this stop from the time he pulls over till the time the tow truck arrives and all of that time. I thought there was some evidence that he was, that Officer Haber was slow walking his processing of the papers. There's not evidence that he was slow walking the processing before Deputy Frankie arrived and before they conducted the dog sniff. There's limited evidence in the record about what exactly Deputy Haber was doing. But the evidence- Do you know how long he was doing it? How long from the time of the stop to when Deputy Frankie shows up? She shows up around the 20-minute mark in the video, and the stop occurred around the two-minute mark. So from when the stop occurred, Deputy Haber was speaking with Mr. Johnson until around the seven or eight-minute mark, I believe. And then Deputy Haber went back to his vehicle, radioed for more information, put together paperwork. There's not much testimony because Mr. Johnson didn't raise this below, but you can hear in the video that Deputy Haber was typing during that time. There's no reason to think that he was dilly-dallying or delaying. Additionally, in his reply brief, Mr. Johnson's clarified that he's not challenging that period of time leading up to the dogs. And if he's only challenging the 66 seconds, that Deputy Haber actually ran the dog around the car. Thank you. I'd be happy to speak about reasonable suspicion if the panel has any questions or about the inventory search. If there are no questions, this court should affirm based on either the dog sniff or the inventory search. Thank you. Thank you, Mr. Timken. Mr. Pillay. Appreciate the extra time, Your Honor. So just— We appreciate you. Oh, thank you. So just quickly, the government's theory here, again, runs right into Rod Riega's discussion, and that's on page 356 to 357 of that decision where the court clearly explained that a safety precaution taken to facilitate a dog sniff is problematic for the same reasons that the detour to perform the dog sniff is problematic. So for that reason, we think that because there wasn't a continuity of the traffic mission, he dropped everything, he testified that he dropped everything to perform that sniff, even though it was a de minimis departure, that is enough under Rod Riega's to cause a constitutional issue. And unless there's further questions, I'll rest on the rest of our briefs. And you, too, were appointed by the court. That's correct, Your Honor. And you both have our deepest thanks for taking on the case and for doing such a good job. Thank you, Your Honor. Thank you. And, Mr. Tenkin, as always, the government, thank you very much for the good job you did and do. So, thanks an awful lot. And